4GRANTA Y. NAKAYAMA
[PRO HAC VICE FORTHCOMING]
GNAKAYAMA@KSLAW.COM
**KING & SPALDING LLP**
1700 PENNSYLVANIA AVE., N.W. SUITE 200
WASHINGTON, DC 20006
TELEPHONE: 202.626.3733

LOGAN MACCUISH
[PRO HAC VICE FORTHCOMING]
LMACCUISH@KSLAW.COM
**KING & SPALDING LLP**
633 WEST FIFTH STREET, SUITE 1600
LOS ANGELES, CA 90071
TELEPHONE: 213.443.4366

ATTORNEYS FOR DEFENDANT

ERIK A. OLSON [8479]
EOLSON@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, P.C.**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>TAP WORLDWIDE, LLC (d/b/a 4 WHEEL DRIVE HARDWARE, TRANSAMERICAN AUTO PARTS, UNITED WEB SALES, 4 WHEEL PARTS, 4 WHEEL PARTS PERFORMANCE CENTER, and TRANSAMERICAN WHOLESALE),<br><br>        Defendant. | **DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)**<br><br><br>Case No. 2:19-cv-00628-JNP-DBP |

TAP Worldwide, LLC ("TAP Worldwide" or "Defendant") moves this Court to dismiss

Plaintiff Utah Physicians for a Healthy Environment, Inc.'s ("UPHE" or "Plaintiff") complaint

(the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction,

pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing, and pursuant to Fed. R. Civ. P. 12(b)(6)

for failing to state a claim for relief.

# TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................... 1

II. RELEVANT ALLEGATIONS ..................................................................................... 2

III. LEGAL STANDARDS ................................................................................................ 4

    A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction ......................................... 4

    B. Rule 12(b)(1) – Lack of Standing .................................................................... 4

    C. Rule 12(b)(6) – Failure to State a Claim ......................................................... 5

IV. CITIZEN SUITS UNDER THE CLEAN AIR ACT ............................................................ 5

    A. Citizen Suits Under the Clean Air Act Are Only Permitted to Enforce an "Emission Standard or Limitation" or Related "Order." ............................................. 5

    B. The Clean Air Act Makes a Clear Distinction Between "Emissions Standards and Limitations" and Prohibited Acts Like Those Circumscribed by Section 7522. ......... 6

V. ARGUMENT ............................................................................................................ 7

    A. Because the Plaintiff Cannot Bring This Action under the Clean Air Act, This Court Lacks Jurisdiction to Hear It. ............................................................ 7

        1. Plaintiff Cannot Bring its First, Second, or Fourth Causes of Action Under the Clean Air Act Because They Do Not Seek to Enforce an "Emissions Standard" or "Limitation." ........................................................................ 7

        2. Plaintiff's Third Cause of Action Also Fails Because It Does Not Seek to Enforce an "Emissions Standard" or "Limitation." ..................................... 11

    B. Even If This Action Were Permitted by 42 U.S.C § 7604(a), Plaintiff Would Still Lack Standing to Bring It. ........................................................................ 12

        1. Plaintiff Cannot Establish Injury-in-Fact. ......................................... 13

        2. Plaintiff Cannot Establish an Injury Fairly Traceable to TAP Worldwide. ........... 15

        3. Plaintiff Does Not Plead Any Injuries Which Can Be Redressed by a Favorable Decision. ............................................................................. 16

    C. All of Plaintiff's Claims Should Also Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Does Not Plead Facts Sufficient to Sustain a Cause of Action. .......... 17

VI. CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action for Rational Transit v. West Side Highway Project by Bridwell*,
    699 F.2d 614 (2d Cir. 1983) ................................................................. 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... 5, 17

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ............................................................... 4

*Council of Commuter Organizations v. Metropolitan Transp. Authority*,
    683 F.2d 663 (2d Cir. 1982) .............................................................. 8, 10

*Engine Mfrs. Ass'n v. U.S. Environmental Protection Agency*,
    88 F.3d 1075, 1079 (D.C. Cir. 1996) ................................................... 11, 12

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167 (2000) .................................................................. 4, 13, 16

*Hill et al. v. Volkswagen, et al. v. Fleshman* (*In re Volkswagen "Clean Diesel"*
    *Mktg., Sales Practices, & Prod. Liab. Litig.*) (*Fleshman*),
    894 F.3d 1030 (9th Cir. 2018) ...................................................... 1, 9, 11

*Home Builders Ass'n of Miss., Inc., v. City of Madison*,
    143 F.3d 1006 (5th Cir. 1998) .............................................................. 4

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*,
    644 F.3d 934, 938 (9th Cir. 2011) ........................................................ 11

*Kansas Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) ...................................................... 5, 16–18

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994) ...................................................................... 4–5

*Loving v. Boren*,
    133 F.3d 771 (10th Cir. 1998) ............................................................ 14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................... 4–5, 13, 15

*Mountain States Legal Foundation v. Castle*,
630 F.2d 754 (10th Cir. 1980) ...................................................................................9

*Nat. Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*,
694 F. Supp. 2d 1092, 1096 (C.D. Cal. 2010), *aff'd*, 651 F.3d 1066 (9th Cir.
2011).......................................................................................................................9, 12

*Native Vill. Of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012) ...............................................................................15–16

*Nat. Res. Def. Council, Inc. v. Train*,
510 F.2d 692 (D.C. Cir. 1974) ...................................................................................9

*Rivera v. Wyeth-Ayerst Labs*,
283 F.3d 315 (5th Cir. 2002) ....................................................................................13

*Save Our Community v. United States Envtl. Protection Agency*,
971 F.2d 1155 (5th Cir. 1992) ....................................................................................8

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ..............................................................................................14

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009) .............................................................................................14–15

*Sw. Envtl. Ctr. v. Sessions*,
355 F. Supp. 3d 1121 (D.N.M. 2018) .....................................................................5, 13

*UPHE v. Diesel Power Gear, LLC, et al.*,
374 F. Supp. 3d 1124 (D. Utah 2019) ....................................................................13, 16

*WildEarth Guardians v. Public Service Co. of Colorado*,
690 F.3d 1174 (10th Cir. 2012) ................................................................................16

*Wilder v. Thomas*,
854 F.2d 605 (2d Cir. 1988) ...................................................................................1, 10

**Statutes**

42 U.S.C. § 7410............................................................................................................12

42 U.S.C. § 7522..................................................................................................*passim*

42 U.S.C. § 7522(a) ....................................................................................................6, 7

42 U.S.C. § 7522(a)(3).............................................................................................7, 10, 19

42 U.S.C. § 7522(c) ................................................................................................. 7

42 U.S.C. § 7542 .................................................................................................... 7

42 U.S.C. § 7543(a) .............................................................................................. 11

42 U.S.C. § 7602(k) ........................................................................................ 6, 8–9

42 U.S.C. § 7604 ............................................................................................... 1, 11

42 U.S.C. § 7604(a) .......................................................................................... 5, 12

42 U.S.C. § 7604(a)(1) ............................................................................................ 1

42 U.S.C. § 7604(f) ......................................................................................... 6, 8–9

**Other Authorities**

40 C.F.R. § 52.2320(c)(59) ..................................................................................... 3

40 C.F.R. § 85.1705 .............................................................................................. 10

40 C.F.R. § 85.1707 .............................................................................................. 10

40 C.F.R. § 85.1709 .............................................................................................. 10

40 C.F.R. § 85.2103 ................................................................................................ 7

40 C.F.R. § 86.1807 ................................................................................................ 7

40 C.F.R. § 86.1845 ................................................................................................ 7

40 C.F.R. § 86.1854 ............................................................................................. 8–9

40 C.F.R. § 86.1854-12(a)(3)(ii) .............................................................................. 2

40 C.F.R. § 1068.235 ............................................................................................ 10

Fed. R. Evid. 301 ................................................................................................... 19

Utah Admin. Code R307-110-17 ............................................................................ 12

Utah Admin. Code R307-201-2 ................................................................................ 3

Utah Admin. Code R307-201-4 ..................................................................... 2–3, 11–12

# I.    INTRODUCTION

Over thirty years ago, the Second Circuit observed that "[i]n order to avoid either overburdening the courts or unduly interfering with implementation of the [Clean Air] Act . . . congress carefully circumscribed the scope of the [Clean Air Act's citizen's suit] provision by authorizing citizens to bring suit **only for violations of specific provisions of the Act** or specific provisions of an applicable implementation plan." *Wilder v. Thomas*, 854 F. 2d 604, 613 (2d Cir. 1988) (emphasis added).  Congress's intent in this respect is demonstrated by the plain language of the Clean Air Act, which provides that a citizen may only sue under the Act to redress two narrow categories of violations: (A) violations of "an emission standard or limitation under [the Clean Air Act]" and (B) violations of orders issued by the Administrator or a State with respect to such a standard or limitation[.]".  *See* 42 U.S.C. § 7604(a)(1).

Here, Plaintiff is attempting to use this suit to pursue an alleged violation—namely, TAP's alleged violation of the anti-tampering provisions set forth in 42 U.S.C. § 7522—which, as the Ninth Circuit recently held, is neither.  *See Hill et al. v. Volkswagen, et al. v. Fleshman* (*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*) (*Fleshman*), 894 F.3d 1030 (9th Cir. 2018) (holding that "[t]he prohibitions contained in § 7522 do not appear to be 'emission standard[s] or limitation[s]' or 'orders issued . . . with respect to' such standards or limitations within the meaning of § 7604(a)(1)" and reasoning that neither the statutory definition of those terms nor the list of categories of "emission standard[s]" and "emission limitation[s]" set forth § 7604(f) "encompasses the generic statutory prohibitions in § 7522").  Accordingly, Plaintiff has no right to bring this action under the Clean Air Act, and the Court lacks jurisdiction to hear it.

Moreover, even if the Clean Air Act did permit Plaintiff to enforce the provisions of Section 7522, which, again, it does not, Plaintiff would still lack standing to bring this action because it can trace no injury whatsoever to any specific act of TAP Worldwide. The fact that the Complaint does not, and cannot, allege that TAP Worldwide discharged a single pollutant alone demonstrates this.

Finally, the Complaint also fails to allege facts sufficient to establish that any action undertaken by TAP Worldwide violated the Clean Air Act or contributed to any injury suffered by Plaintiff.

For these reasons and the reasons discussed in more detail herein, the Court should dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

## II.    RELEVANT ALLEGATIONS

Through its "4 Wheel Parts" chain of retail stores, TAP Worldwide sells a variety of aftermarket automotive parts and accessories oriented towards the off-road segment of the vehicle enthusiast industry. *See* Compl. ¶¶ 26–77. TAP Worldwide operates two brick-and-mortar stores within the State of Utah, both of which sell and install many of these products. *Id.* ¶¶ 25–26. TAP does not manufacture—or contribute to the manufacture of—any of the products at issue in the Complaint. *See id.* ¶ 77. These products are all manufactured by third-parties, and TAP is merely a retailer and distributor of them. *Id.*

The Complaint alleges that TAP Worldwide violated 42 U.S.C. § 7522 (as well as the federal regulation restating it, 40 C.F.R. 86.1854-12(a)(3)(ii) and Utah Admin Code R307-201-

4[1] by offering to sell, selling, or installing products that would render inoperable emission control devices in motor vehicles. *Id.* ¶ 30. The Complaint asserts the following four causes of action based upon this seminal allegation:

(1) Violation of 42 U.S.C. § 7522 (and the federal regulation restating it) by offering to sell and/or selling aftermarket "defeat" products in Utah ("First Cause of Action"). *See* Compl., ¶¶ 91–95.

(2) Violation of 42 U.S.C. § 7522 (and the federal regulation restating it) by installing aftermarket "defeat" products in motor vehicles in Utah ("Second Cause of Action"). *Id.*, ¶¶ 102–05.

(3) Violation of Utah's State Implementation Plan ("SIP") Regulation R307-201-4 and 40 C.F.R. § 52.2320(c)(59) by removing, and/or making inoperable, emission control devices in motor vehicles in Utah ("Third Cause of Action"). *Id.*, ¶¶ 113–17.

(4) Violation of 42 U.S.C. § 7522 (and the related federal regulation restating it) by removing federally-required emission control devices ("Fourth Cause of Action"). *Id.*, ¶¶ 123–26.

Again, all four of these causes of action are based entirely upon Plaintiff's allegation that TAP Worldwide violated Section 7522 of the Clean Air Act and a related Utah state analog, and

---

[1] Plaintiff incorrectly cites the Utah SIP tampering prohibition as Utah Admin. Code R307-201-2, which is the "Applicability" section of Utah's SIP regulation. Complaint, ¶ 109 ("R307-201 applies statewide to any sources of emissions except for sources listed in section IX, Part H of the state implementation plan or located in a PM10 nonattainment or maintenance area."). The Utah SIP's actual tampering prohibition is found at R307-201-4 ("Automobile Emission Control Devices").

the Complaint does not allege any cause of action based upon any alleged violation by TAP of

any emission standard or limitation promulgated under the Clean Air Act. *Id.*, ¶¶ 87–128.

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a suit where the subject

Court "lack[s] of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). In response to a

motion brought under Rule 12(b)(1), Plaintiff has the burden of establishing that the Court has

subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994);

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In order to establish that a Court has

subject matter jurisdiction, a complaint "must contain non-conclusory facts" to establish the

district court's jurisdiction. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012).

Thus, a court should grant a motion to dismiss where the plaintiff cannot prove any set of facts to

support a claim for which relief can be granted. *Home Builders Ass'n of Miss., Inc. v. City of

Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

#### B. Rule 12(b)(1) – Lack of Standing

In order to have standing under Article III of the United States Constitution, Plaintiff – as

an association – must show, *inter alia*, that its members would otherwise have standing to sue

individually. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S.

167, 181 (2000). Specifically, a plaintiff bringing a suit on behalf of the members of its

association must show "(1) it has suffered an 'injury in fact' that is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Id.* at 180–81. "A failure to meet any one of these three criteria constitutes a lack of Article III standing and requires dismissal under Federal Rule of Civil Procedure 12(b)(1)." *Sw. Envtl. Ctr. v. Sessions*, 355 F. Supp. 3d 1121, 1128 (D.N.M. 2018). The plaintiff bears the burden of establishing that the Court has subject matter jurisdiction. *See Kokkonen*, 511 U.S. at 377; *Lujan*, 504 U.S. at 561.

### C.       Rule 12(b)(6) – Failure to State a Claim

Dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate where a plaintiff fails to allege sufficient facts to support a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). While federal courts must accept well-pled factual allegations in a complaint as true, this requirement is "inapplicable to legal conclusions." *Kansas Penn*, 656 F.3d at 1214 (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

### IV.      CITIZEN SUITS UNDER THE CLEAN AIR ACT

#### A.       Citizen Suits Under the Clean Air Act Are Only Permitted to Enforce an "Emission Standard or Limitation" or Related "Order."

By its express language, the citizen suit provision of the Clean Air Act only permits citizens to bring private actions against a defendant "who is alleged to have violated . . . or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]" 42 U.S.C. § 7604(a).

The Clean Air Act explicitly defines an "emission standard" as "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of

emissions of air pollutants on a continuous basis, including any requirement relating to the

operation or maintenance of a source to assure continuous emission reduction, and any design,

equipment, work practice or operational standard promulgated under" the Clean Air Act. 42

U.S.C. § 7602(k). For reference, the Clean Air Act provides a list of such "emissions standards

and limitations," including:

> (1) a schedule or timetable of compliance, emission limitation, standard of performance or emission standard, or

> (2) a control or prohibition respecting a motor vehicle fuel or fuel additive, or

> (3) any condition or requirement of a permit . . . relating to significant deterioration of air quality . . . nonattainment . . . [or] to primary nonferrous smelter orders. . . [or] . . . any condition or requirement under an applicable implementation plan relating to transportation control measures, air quality maintenance plans, vehicle inspection and maintenance programs or vapor recovery requirements . . . ; and,

> (4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.

> which is in effect under this chapter (including a requirement applicable by reason of section 7418 of this title) or under an applicable implementation plan.

42 U.S.C. § 7604(f).

Accordingly, for purposes of the Clean Air Act, an "emission standard" is unequivocally

defined to mean a specific, non-discretionary legal limit on release of pollutants into the

atmosphere.

### B. The Clean Air Act Makes a Clear Distinction Between "Emissions Standards and Limitations" and Prohibited Acts Like Those Circumscribed by Section 7522.

As discussed above, the Clean Air Act provides a narrow definition of "emission

standards and limitations." Nowhere in this definition—and, indeed, nowhere else in the Clean

Air Act—are the acts addressed in Section 7522 (or the related regulations cited by Plaintiff in its Complaint) described as "emissions standards or limitations." These acts are specifically addressed in an entirely different section of the Clean Air Act, which prohibits tampering and other acts and has nothing whatsoever to do with emissions standards or emissions limits.[2]

With respect to the enforcement of Section 7522 and certain other prohibited acts, EPA has issued specific guidance to manufacturers and dealers explaining how it interprets and enforces this section, further demonstrating that neither EPA nor the Legislature ever intended for the Clean Air Act's anti-tampering provisions to be enforced by anyone other than EPA. *See* EPA, "Mobile Source Enforcement Memorandum 1A, Interim Tampering Enforcement Policy" (June 25, 1974) ("Memo 1A").

## V. ARGUMENT

### A. Because the Plaintiff Cannot Bring This Action under the Clean Air Act, This Court Lacks Jurisdiction to Hear It.

1. Plaintiff Cannot Bring its First, Second, or Fourth Causes of Action Under the Clean Air Act Because They Do Not Seek to Enforce an "Emissions Standard" or "Limitation."

Plaintiff's First, Second, and Fourth Causes of Action each rely on the anti-tampering prohibitions in 42 U.S.C. § 7522(a)(3) and the related EPA regulations that restate them. As

---

[2] This section of the Clean Air Act also sets forth numerous other prohibitions relating to light-duty vehicles, none of which could reasonably by described as "emissions standards or limitations" under the Clean Air Act. For example, the Clean Air Act and EPA's regulations have standards for record creation and retention, warranties on emissions parts, requirements for manufacturers of light-duty vehicles to test in-use vehicles in the field, and requirements for manufacturers to label vehicles identifying those vehicles as certified. *See* 42 U.S.C. §§ 7522(a), (c), 7542; 40 C.F.R. §§ 85.2103, 86.1807-01, 86.1845-04. Again, these provisions in the Clean Air Act and EPA's regulations are not emissions standards, but rather obligations applicable to individuals, such as vehicle manufacturers, and are enforceable only by EPA.

discussed above—and as a matter of law—these prohibitions are not emission standards or limitations that a citizen may enforce.

Citizen suits under the Clean Air Act are limited to cases involving alleged violations of an emission standard or limitation, and a court will lack jurisdiction to act in a citizen suit if the citizen plaintiff fails to meet this requirement. *See Council of Commuter Organizations v. Metropolitan Transp. Authority*, 683 F.2d 663, 671 (2d Cir. 1982) (holding that a Clean Air Act citizen suit was correctly dismissed where "plaintiffs have not stated a valid claim of a violation of an emission standard or limitation"); *see also Save Our Community v. United States Envtl. Protection Agency*, 971 F.2d 1155, 1162 (5th Cir. 1992) (holding that, in a Clean Water Act case involving a similar citizen suit provision, citizens must allege a violation of an effluent standard or limitation or a state enforceable order, and that failure to make such an allegation meant the district court lacked jurisdiction to hear the case).

As discussed above, an "emission standard or limitation" is "a requirement established by the State or the Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under this chapter." 42 U.S.C. § 7604(f); *see also id.* at § 7602(k). Thus, an emission standard is an objective measurement of air pollution emissions—such as a maximum allowable emission limit—and is a concept wholly distinct from the Clean Air Act's "prohibited acts," which are separately found in Section 7522 and in 40 C.F.R. § 86.1854.

The question of whether anti-tampering provisions like Section 7522 and 40 C.F.R. § 86.1854 are "emissions standards" or "emissions limitations" that a private citizen can sue to enforce was directly addressed by the Ninth Circuit in its recent decision in *Fleshman*. In *Fleshman*, a citizen sought to intervene in the Volkswagen diesel litigation in order to object to a consent decree between Volkswagen and the federal government. *See Fleshman*, 894 F.3d at 1030. The citizen alleged that the consent decree violated federal law and Virginia's SIP and, based upon that allegation, sought to "enjoin violations of one of the 'standard[s], limitation[s], or order[s]' underlying the government's enforcement action against Volkswagen," including violations of Section 7522. *Id.* at 1040 (quoting 42 U.S.C. § 7604(b)(1)(B)). The Ninth Circuit dismissed the citizen's action and held that "[n]either the § 7602(k) definition nor the § 7604(f) list of categories of 'emission standard[s]' and 'emission limitation[s]' encompasses the generic statutory prohibitions of § 7522." *Id.* at 1041. The Court further held that in enforcing Section 7522, "the United States sued [Volkswagen] for violations of statutory provisions that are **not**, and do not incorporate, 'standard[s], limitation[s], or order[s]'. . . ." *Id.* at 1042 (emphasis added).

*Fleshman* is consistent with the intent of the citizen suit provision, which limits citizen suits to enforcement of "specific **non-discretionary clear-cut requirements** of the Clean Air Act," *Mountain States Legal Foundation v. Costle*, 630 F.2d 754, 766 (10th Cir. 1980) (emphasis added), using an "objective evidentiary standard" that "would not require reanalysis of technological or other considerations at the enforcement stage." *See Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 723 (D.C. Cir. 1974) (citing to the 91st Congress's Report, S. Rep. No 91-1196 (1970)). Indeed, courts across the country have repeatedly rejected attempts

by private parties to use the citizen suit provision to enforce complex technical requirements that do not involve an objective emission standard. *See Wilder v. Thomas*, 854 F.2d 605, 613 (2d Cir. 1988) ("In order to avoid either overburdening the courts or unduly interfering with implementation of the [Clean Air Act] . . . congress carefully circumscribed the scope of the provision by authorizing citizens to bring suit only for violations of specific provisions of the [Clean Air Act] or specific provisions of an applicable implementation plan."); *see also Council of Commuter Orgs.*, 683 F.2d at 670 (holding that plaintiffs seeking to bring a citizen suit "for violation of an emission standard or limitation [. . .] must allege a violation of a specific strategy or commitment in the SIP and describe, with some particularity, the respects in which compliance with the provision is deficient"); *Action for Rational Transit v. West Side Highway Project by Bridwell*, 699 F.2d 614, 617 n.3 (2d Cir. 1983) (dismissing a citizen suit based in part on a state's application of a 1% "de minimis" rule with respect to hydrocarbon emissions, stating that plaintiff "cites no support, statutory or otherwise, establishing that this de minimis rule, or its application in this case amounts to a violation of a federal emission standard or limitation[.]").[3]

---

[3] Similarly, this case is not suitable for a citizen suit since it involves extensive, complex fact finding, rather than a non-discretionary requirement. Specifically, in order to adjudicate this matter, the Court would be required to determine, among other things: (1) whether "a principal effect of the subject products is to bypass, defeat, or render inoperative emissions components" (*see* 42 U.S.C. § 7522(a)(3)); (2) whether TAP Worldwide, despite being purely a retailer—rather than a manufacturer of the subject products—"knew or should have known . . . [that] a principal effect of the products is to bypass, defeat, or render inoperative emissions components." (*id.*); (3) whether, as a mere retailer of the subject products, TAP Worldwide had a reasonable basis for believing that the parts would not cause tampering (*see* Memo 1A, p. 2); and (4) whether the vehicles on which the subject products were used were not exempt from the Clean Air Act (*see, e.g.*, 40 C.F.R. §§ 85.1705, 1707, 1709, 1068.235). These required findings would all be **highly** discretionary and cannot be assessed via an "objective evidentiary standard," as intended by Congress.

In sum, Plaintiff seeks to enforce the anti-tampering provisions of Section 7522, which are not, by definition, "emission standards or limitations" for purposes of Section 7604. This fact is made clear by the plain language of the Clean Air Act, the legislative intent underpinning Section 7604, and the Ninth Circuit's holding in *Fleshman*. Thus, Plaintiff is barred from bringing this action and the Court lacks jurisdiction to hear it.

        2.      <u>Plaintiff's Third Cause of Action Also Fails Because It Does Not Seek to Enforce an "Emissions Standard" or "Limitation."</u>

Plaintiff's Third Cause of Action fails for the same reasons as Plaintiff's other causes of action, as it, too, improperly seeks to enforce, under the Clean Air Act's citizen suit provision, an anti-tampering prohibition which is not an "emission standard" or "emission limitation"—namely, Utah's SIP, Utah Admin. Code R307-201-4.

The Clean Air Act prohibits all states from adopting and enforcing regulations applicable to light-duty vehicles. 42 U.S.C. § 7543(a); *Engine Mfrs. Ass'n v. U.S. Env't Prot. Agency*, 88 F.3d 1075, 1079 (D.C. Cir. 1996) ("In contrast to federally encouraged state control over stationary sources, regulation of motor vehicle emissions had been a principally federal project."); *Jensen Family Farms v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 938 (9th Cir. 2011) ("Because the regulation of mobile source emissions is a federal responsibility, Congress has expressly preempted states from setting emissions standards for mobile sources."). Accordingly, Utah's SIP cannot create a new standard where the Clean Air Act does not have one.[4]

---

[4] The Clean Air Act allows states to adopt SIPs with emission standards for mobile sources, but it explicitly prohibits states from adopting and enforcing motor vehicle emission standards. 42 U.S.C. § 7543(a) ("No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle

Moreover, Utah's SIP must be interpreted as being consistent with the Clean Air Act and, for the reasons discussed above, the Clean Air Act prohibits citizens from bringing suit to enforce Section 7522. *See* 42 U.S.C. § 7410 (providing that EPA may require revisions to a SIP to comply with the Clean Air Act); *see also Nat. Res. Def. Council, Inc. v. S. Coast Air Quality Mgmt. Dist.*, 694 F. Supp. 2d 1092, 1096 (C.D. Cal. 2010), *aff'd*, 651 F.3d 1066 (9th Cir. 2011) ("EPA must consider whether the SIP meets all applicable requirements under the [Clean Air Act].").  To find otherwise would provide a backdoor for plaintiffs to do what they otherwise are explicitly prohibited from doing—bringing suits to enforce the provisions of Section 7522.

Since Utah cannot create a new standard applicable to vehicles, much less enforce—or have private citizens enforce—that standard, and because the Utah SIP regulation must, in any event, be consistent with the Clean Air Act, this Court should also dismiss the Third Cause of Action for the reasons described above.

>    **B.**      **Even If This Action Were Permitted by 42 U.S.C § 7604(a), Plaintiff Would Still Lack Standing to Bring It.**

Plaintiff's Complaint should also be dismissed for the separate and independent reason that Plaintiff has not alleged—and indeed cannot allege—the elements required to establish standing under Article III of the United States' Constitution.

As discussed above, in order to have standing under Article III of the United States Constitution, an association like Plaintiff must show, among other things, that its members would

---

engines subject to this part."); *see also Engine Mfrs. Ass'n*, 88 F.3d at 1078–79.  Thus, Utah's SIP contains emission standards only for stationary sources, such as factories or power facilities, and requires emissions testing.  *See, e.g.*, Utah Admin. Code R307-110-17.  While it discusses mobile sources and tampering with such sources, any requirement or regulation included in Utah's SIP is not a vehicle emission standard.  *Id.* at R307-201-4.

otherwise have standing to sue individually. *Laidlaw*, 528 U.S. at 181.[5] A plaintiff bringing a

suit on behalf of the members of its association must show "(1) it has suffered an 'injury in fact'

that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at

180–81. "Failure to establish any one [of these elements] deprives the federal courts of

jurisdiction to hear the suit." *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 319 (5th Cir. 2002);

*Sw. Envtl. Ctr.*, 355 F. Supp. 3d at 1128 ("A failure to meet any one of these three criteria

constitutes a lack of Article III standing and requires dismissal for lack of subject matter

jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Here, Plaintiff fails to meet each

element.

### 1.     Plaintiff Cannot Establish Injury-in-Fact.

Here, Plaintiff must demonstrate an injury-in-fact, meaning that the complained-of injury

must be concrete and particularized and not conjectural or hypothetical. *Laidlaw*, 528 U.S. at

181. The relevant showing is not an alleged injury to the environment, but an injury to the

plaintiff. *Id.* That injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504

U.S. at 560 n.1.

---

[5] Association plaintiffs must also establish that the interests at stake are germane to the organization's purposes and that neither the claim asserted, nor the relief requested requires the participation of individual members in the lawsuit. *Laidlaw*, 528 U.S. at 169. In a previous Clean Air Act citizen suit case involving Plaintiff, this Court noted: "UPHE is a non-profit organization whose purposes include 'advocat[ing] for clean air, healthy land and clean water.' [That] lawsuit [was] germane to that purpose. UPHE asserts its individual members' participation in this lawsuit is not required, and the court agrees." *UPHE v. Diesel Power Gear, LLC, et al.*, 374 F. Supp. 3d 1124, 1132 (D. Utah 2019). As such, Defendant does not dispute that this additional requirement is met.

The Complaint asserts that Plaintiff's members have health effects from emissions. Compl. ¶¶ 20, 96, 106, 117, 127. However, the Complaint provides only bare assertions that such health effects are related to TAP Worldwide's actions, and such bare assertions of harm are insufficient to establish injury in fact. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("[The plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *see also Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing."); *Loving v. Boren*, 133 F.3d 771, 773 (10th Cir. 1998) (finding that the plaintiff lacked standing and holding that "[n]owhere did plaintiff adduce evidence that he suffered any injury in fact as a result of" defendant's actions, and thus "did not establish that he was injured by defendant's actions, let alone that the injury affected him in a personal and individual manner.").

While Plaintiff's Complaint alleges that certain of the products at issue may increase emissions, *see* Compl. ¶¶ 73f, 75b, 77, 79, this is not the standard by which aftermarket products are regulated under the Clean Air Act or any other applicable federal standard. Under the Clean Air Act, vehicles are certified to emit less than a certified limit, meaning vehicles can emit up to that limit and manufacturers certify their vehicles to a standard higher than what the vehicles emit during testing to account for test-to-test or vehicle-to-vehicle variability. 40 C.F.R. § 86.1811-17(b). Consistent with this, EPA's interpretive guidance of the anti-tampering provisions of the Clean Air Act states that dealers may sell and install products on vehicles if they have a reasonable basis for believing that the products will "not cause similar vehicles or engines to fail to meet applicable emission standards[.]" Memo 1A, p.3. Thus, the Clean Air

Act draws a clear distinction between a mere increase in emissions (like those alleged by Plaintiff here), which may be permitted, and an increase of emissions beyond an applicable standard, which is not. The Complaint fails to make this distinction and therefore fails to state that there was an increase in emissions beyond a regulatory limit that caused Plaintiff's alleged injury.

2.     <u>Plaintiff Cannot Establish an Injury Fairly Traceable to TAP Worldwide.</u>

In addition to being concrete and particularized, an injury must also be "fairly traceable" to the alleged violations in order to confer standing. *Lujan*, 504 U.S. at 560. "[G]eneralized harm to…the environment" will not suffice for an organization to bring a suit. *Earth Island Institute*, 555 U.S. at 494. "The line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Native Vill. Of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th. Cir. 2012) (internal quotation marks omitted). "[W]here the causal chain []involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, [. . .] the causal chain is too weak to support standing[.]" *Id*. at 867.

Here, Plaintiff alleges that the products that TAP Worldwide sells and installs "are causing those vehicles to emit more pollutants into the air of Utah than they would absent the sale, installation and use of those parts." Compl. ¶ 65; *see also* ¶¶ 19–22. However, the Complaint fails to connect TAP Worldwide's actions to any air pollution within the State of Utah or elsewhere.[6] The First Cause of Action is based on sales or "offers for sale" of certain

---

[6] Although no such injury is alleged or alluded to anywhere in the Complaint, to the extent that Plaintiff intends to allege that it suffered injury outside of the State of Utah—or to the extent that Plaintiff seeks a remedy which extends beyond the State of Utah—such a claim would fail both for the reasons set forth herein and for a variety of others.

aftermarket vehicle products, Compl. ¶ 87, but there is no evidence that parts sold—and certainly

there can be no evidence that parts merely "offered for sale"—were ever installed on vehicles

and that their installation did in fact increase emissions. The other causes of action allege that

TAP Worldwide installed the subject products on vehicles, Compl. ¶¶ 98–128, however—with

respect to these causes of action too—there are no facts pled to support the assertion whatsoever.

See Compl. ¶ 26. Thus, consistent with the requirement to disregard all conclusory statements of

law in the Complaint, the Court should dismiss these claims. *Kansas Penn*, 656 F.3d at 1214.

Even assuming, *arguendo*, that TAP Worldwide's actions have caused air pollution, this

still does not provide a basis for causation. This Court previously held that a plaintiff must show

that a defendant "**discharged a pollutant** that causes or contributes to the kinds of injuries"

suffered by members of a group. *Diesel Power Gear*, 374 F. Supp. 3d at 1135 (emphasis added).

Here, there is no allegation that TAP Worldwide discharged any pollutant. Rather, each

allegation is premised on TAP Worldwide providing something to a third party and that third

party discharging a pollutant. Thus, any harm to Plaintiffs is "attenuated" and involves

numerous third parties acting independently. *Native Vill. Of Kivalina*, 696 F.3d at 867.

Therefore, Plaintiff also fails to meet this requirement.

### 3. Plaintiff Does Not Plead Any Injuries Which Can Be Redressed by a Favorable Decision.

Finally, Plaintiff also fails to establish that it is likely "that the injury will be redressed by

a favorable decision." *Laidlaw*, 528 U.S. at 181. To establish redressability in a citizen suit, a

plaintiff must show that its requested relief will specifically redress its members' alleged injuries,

"as opposed to merely advancing generalized environmental interests." *WildEarth Guardians v.

Public Service Co. of Colorado*, 690 F.3d 1174, 1190 (10th Cir. 2012). But, again, Plaintiff has

not demonstrated that TAP Worldwide's actions negatively contribute to the environment, and there is no allegation that the parts increase emissions beyond certified limits.

### C. All of Plaintiff's Claims Should Also Be Dismissed Pursuant to Rule 12(b)(6) Because Plaintiff Does Not Plead Facts Sufficient to Sustain a Cause of Action.

Dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate where a plaintiff fails to allege sufficient facts to support his or her claims for relief. *Twombly*, 550 U.S. at 570; *Kansas Penn*, 656 F.3d at 1214. While federal courts must accept well-pled factual allegations in a complaint as true, this requirement is "inapplicable to legal conclusions." *Kansas Penn*, 656 F.3d at 1214 (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

First and foremost, there is adequate basis to dismiss the entirety of Plaintiff's Complaint pursuant to Rule 12(b)(6) for the reasons discussed in Section A—*i.e.*, because Plaintiff fails to allege any violation of an "emission standard or limitation" which allegation, under the Clean Air Act, would be an essential element of each one of its causes of action. Moreover, the Complaint fails even to plead all of the essential elements of a violation of Section 7522 or the Utah SIP. To establish a violation of Section 7522's anti-tampering provision, Plaintiff must allege at least some facts about the alleged sales or "offers for sale" of the subject products and explain (i) how the products affect emissions (with respect to the First Cause of Action) or how TAP Worldwide installed such parts (with respect to the Second, Third and Fourth Causes of Action). Despite this requirement, the First Cause of Action contains no evidence that the subject products were in fact sold in Utah, *see* Compl. ¶ 87, and the Second, Third, and Fourth Causes of Action fail to allege any facts to demonstrate that TAP Worldwide did in fact install

the products on vehicles within the State of Utah or remove emission devices on vehicles within the State of Utah. *See id.* at. ¶¶ 26, 98–128. The Complaint merely makes conclusory allegations with respect to both, which allegations are not sufficient to state a claim. *Kansas Penn*, 656 F.3d at 1214.

Finally, Plaintiff also fails to establish how any category of product referenced in the Complaint could violate the Clean Air Act or Utah's SIP by rendering inoperative emission control devices or increasing emissions absent some action by a third party. As alleged, the exhaust systems identified in the Complaint are effectively tubes, and there is no allegation that any persons' use of such products would affect emissions, unless that person were also to remove his or her catalytic converter in conjunction with such use. *See* Compl. ¶ 73a. Accordingly, even if a user were to misuse one of these exhaust kits, such misuse might constitute a violation of Section 7522 (or the Utah SIP) by that user, but not by TAP Worldwide.[7] The same is true with respect to the catalytic converters and reprogrammers at issue in the Complaint. With respect to catalytic converters, the Complaint alleges only that such products were "not as effective at reducing emissions as the manufacturer's originally-installed" converters. *See id.* at ¶ 75b. This is not the test for violations of Section 7522—dealers like TAP Worldwide may sell and install parts on vehicles so long as those parts do not increase vehicle emissions above allowable limits. Memo 1A, p. 3. With respect to reprogrammers, there is **no** specific allegation

---

[7] Similarly, the Complaint alleges that "emissions from a motor vehicle increase when the original catalytic converter is removed and replaced with a hollow tube." *Id.* at ¶ 73f. But, again, as described above, that is not the standard by which aftermarket products are judged, and, even if it were, Plaintiff still fails to allege any facts to support that TAP Worldwide—as opposed to the "hypothetical misuser" of the product in Plaintiff's allegations—actually removed any catalytic converter on any vehicle. *See* Memo 1A, p. 3.

anywhere in the Complaint that the reprogrammers actually affected emissions – the Complaint makes only general and vague allegations that they could if they were misused. *See* Compl. ¶ 77; *see also* ¶¶ 79, 84.

Without any allegation that the parts increased emissions above allowable limits, the Complaint fails to state a claim, and, accordingly, the Court also has independent grounds to dismiss the Complaint under Rule 12(b)(6).[8]

## VI.    CONCLUSION

For the foregoing reasons, TAP Worldwide respectfully requests this Court dismiss Plaintiff's Complaint and each cause of action alleged in it with prejudice pursuant to Rules 12(b)(1) and 12(b)(6).

DATED this 7th day of January, 2020.

MARSHALL OLSON & HULL, P.C.

BY:    /s/ Erik A. Olson
       ERIK A. OLSON
       TREVOR C. LANG

GRANTA Y. NAKAYAMA
[PRO HAC VICE FORTHCOMING]
LOGAN MACCUISH
[PRO HAC VICE FORTHCOMING]
KING & SPALDING LLP

ATTORNEYS FOR DEFENDANT TAP WORLDWIDE, LLC

---

[8] Plaintiff attempts to pass the burden to TAP Worldwide to provide that the subject products do not affect emissions. *See id.* at ¶ 67. Needless to say, it is not TAP Worldwide's burden to prove the effect of these products on emissions. *See* Fed. R. Evid. 301; 42 U.S.C. § 7522(a)(3).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **DEFENDANT'S MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** was filed this 7th day of January, 2020, via the Court's electronic system, which served all counsel of record.

/s/ Erik A. Olson