THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> TAP WORLDWIDE, LLC (d/b/a 4 WHEEL DRIVE HARDWARE, TRANSAMERICAN AUTO PARTS, UNITED WEB SALES, 4 WHEEL PARTS, 4 WHEEL PARTS PERFORMANCE CENTER, and TRANSAMERICAN WHOLESALE), <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING [14] DEFENDANT'S MOTION TO DISMISS** <br><br> Case No. 2:19-cv-00628-DBB <br><br> District Judge David Barlow |

Utah Physicians for a Healthy Environment ("UPHE") brings this action against TAP Worldwide, LLC ("TAP") for violations of the Clean Air Act and Utah's corresponding State Implementation Plan ("the Utah SIP").[1] TAP now moves to dismiss the action.[2] Because the court has jurisdiction and TAP has not demonstrated that UPHE's Complaint is legally insufficient to state a claim, TAP's motion to dismiss is DENIED.

## BACKGROUND

TAP is a company that does business in Utah; it allegedly sells and installs "aftermarket defeat parts" and removes emission control devices from vehicles.[3] An "aftermarket defeat part"

---

[1] *See* Complaint, ECF No. 2 at ¶¶ 87–128.
[2] *See* Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ("Motion to Dismiss"), ECF No. 14 at i.
[3] Complaint at ¶ 26.

is a vehicle part that bypasses, defeats, or renders inoperative an emission control device in a motor vehicle.[4]

UPHE is an organization whose members are "particularly concerned with the significant contribution of motor vehicle exhaust to elevated levels of respirable particulate matter and ozone in the airshed of the Wasatch Front, and the negative impact that these pollutants have on the public's health."[5] UPHE brought this citizen suit under the Clean Air Act and the Utah SIP to challenge TAP's alleged practice of selling and installing aftermarket defeat parts and removing emission control devices from vehicles.[6] TAP now moves to dismiss the action because it argues that the Clean Air Act does not authorize this type of citizen suit, that UPHE does not have standing, and that UPHE has failed to state a claim for relief.[7]

## STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[8] Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[9] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, the court accepts all facts pleaded by the nonmoving party as true and makes all reasonable inferences from the pleadings in favor of the nonmoving party.[10] But the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[11]

---

[4] *Id.* ¶ 63.
[5] *Id.* ¶ 8.
[6] *Id.* ¶¶ 87–128.
[7] Motion to Dismiss at i–ii.
[8] Fed. R. Civ. P. 12(b)(6).
[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[10] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).
[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

Additionally, a motion to dismiss that asserts lack of standing is a challenge to this court's jurisdiction and is thus a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[12] When a motion to dismiss actually implicates a court's jurisdiction, "the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence."[13]

## DISCUSSION

TAP offers three bases for dismissal: that the Clean Air Act does not authorize UPHE to bring a citizen suit to enforce its anti-tampering provisions, that UPHE does not have Article III standing to bring the suit, and that UPHE does not allege sufficient facts to sustain a cause of action.[14] The court will address these arguments in turn.

### I.   UPHE has statutory standing for this citizen suit.

TAP's first argument for dismissal is that the Clean Air Act ("CAA") does not permit citizen suits to enforce the anti-tampering prohibitions of 42 U.S.C. § 7522.[15] TAP contends that this means the court lacks subject matter jurisdiction over the case.[16] In considering this same argument previously, the Tenth Circuit has noted that the issue is actually one of statutory standing and that "statutory standing is not jurisdictional."[17] As such, this question does not implicate this court's subject matter jurisdiction, and UPHE does not bear a burden to demonstrate that the court has jurisdiction.[18]

---

[12] Fed. R. Civ. P. 12(b)(1).
[13] *United States ex rel. Hafter D.O. v. Spectrum Emergency Care*, 190 F.3d 1156, 1160 (10th Cir. 1999).
[14] *See* Moton to Dismiss at i.
[15] Motion to Dismiss at 7.
[16] *Id*.
[17] *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, ___ F.4th ___, No. 20-4043, 2021 WL 6122914, at *13 (10th Cir. Dec. 28, 2021).
[18] Because the statutory standing question is not jurisdictional, the court considers the question at the motion to dismiss stage under the Rule 12(b)(6) standard, not the Rule 12(b)(1) standard.

Turning to the statute itself, the citizen-suit provision of the CAA, § 7604, permits "any person" to:

> commence a civil action on his own behalf . . . against any person . . . who is alleged to have violated . . . or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation.[19]

The Complaint does not allege that TAP violated an order issued by the Administrator or the State, but rather that TAP violated "an emission standard or limitation."[20] So the question becomes, what is an "emission standard or limitation"?

Section 7604 defines "Emission standard or limitation under [the CAA]" to include, among other things, an "emission limitation, standard of performance or emission standard" and "any other standard [or] limitation . . . established . . . under any applicable State implementation plan approved by the [EPA] Administrator."[21] In short, § 7604 does not define more granularly the specific terms "emission limitation" and "emission standard," but it does clarify that the overarching concepts include any "standard of performance" and also indicates that "any other standard [or] limitation" under an approved SIP would qualify.

Section 7602 provides further elaboration, defining an "emission limitation" and "emission standard" as:

> [A] requirement established by the State or the [EPA] Administrator which limits the quantity, rate, or concentration of emissions of air pollutants on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction, and any design, equipment, work practice or operational standard promulgated under [the CAA].[22]

---

[19] 42 U.S.C. § 7604(a)(1).
[20] *Id.*
[21] *Id.* § 7604(f)(1), (4).
[22] 42 U.S.C. § 7602(k)

And the same section defines a "standard of performance" to mean "a requirement of continuous emission reduction, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction."[23]

Finally, § 7522 prohibits the following:

for any person to remove or render inoperative *any device or element of design* installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter . . . after such sale and delivery to the ultimate purchaser; or

for any person to manufacture or sell, or offer to sell, or install, *any part or component* intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is *to bypass, defeat, or render inoperative any device or element of design* installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter . . . . [24]

"Element of design" is defined by the relevant regulation as "any control system (i.e., computer software, electronic control system, *emission control system*, computer logic) . . . and/or hardware items on a motor vehicle or motor vehicle engine."[25] Finally, "emission control system" is defined as "emission control devices, auxiliary emission control devices, engine

---

[23] *Id.* § 7602(l).

[24] *Id.* § 7522(a)(3)(A)–(B) (emphases added). The Utah SIP includes a similar mandate that:

Any person owning or operating any motor vehicle or motor vehicle engine registered or principally operated in the State of Utah on which is installed or incorporated a system or device for the control of crankcase emissions or exhaust emissions in compliance with the Federal motor vehicle rules, shall maintain the system or device in operable condition and shall use it at all times that the motor vehicle or motor vehicle engine is operated. No person shall remove or make inoperable the system or device or any part thereof, except for the purpose of installing another system or device, or part thereof, which is equally or more effective in reducing emissions from the vehicle to the atmosphere.

Utah R307-201-2.

[25] 40 C.F.R. § 86.1803-01 (emphasis added).

modifications and strategies, and other elements of design designated by the Administrator used to control exhaust emissions of a vehicle."[26]

In sum, § 7522 and related regulations prohibit, among other things, "any person" from selling or installing any part or component that defeats or renders inoperative any device, hardware, or software "used to control exhaust emissions of a vehicle." They also prohibit any person from removing or rendering inoperative any device, hardware, or software "used to control exhaust emissions of a vehicle." The Complaint contains numerous fact allegations that TAP has removed emissions control devices, as well as sold and installed aftermarket emissions defeat parts.[27]

TAP argues that its alleged actions cannot give rise to a citizen suit under the CAA because "an 'emission standard' is unequivocally defined to mean a specific, non-discretionary legal limit on release of pollutants," that the definition is "narrow," and that there is a "clear distinction" between "emissions standards and limitations" and the content of § 7522.[28]

The Tenth Circuit recently considered the question of whether the CAA authorized citizen suits to enforce § 7522 in *Diesel Power*.[29] Although the Tenth Circuit was analyzing the district court's decision for plain error and did not definitively decide the question, the Tenth Circuit's opinion is persuasive and this court defers to it.

As is the case here, the defendants in *Diesel Power* contended that § 7522 and Utah SIP Regulation R307-201-2 "do not implicate any 'emission standard or limitation' because both

---

[26] *Id.*
[27] Complaint at ¶¶ 64–65, 70–83.
[28] Motion to Dismiss at 6–7.
[29] *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, ___ F.4th ___, No. 20-4043, 2021 WL 6122914, at *13 (10th Cir. Dec. 28, 2021).

§ 7522(a) and R-307-202-2 merely prohibit various acts related to emission-control and defeat devices, rather than imposing numerical limits on emissions."[30] The Tenth Circuit found that "[d]efinitions within the CAA itself, however, refute this argument."[31]

The court then reviewed the relevant statutory language and concluded that:

> UPHE argues that "[a]n anti-tampering requirement prohibiting the removal or defeat of an emission control device, such as a catalytic converter, that is designed to reduce emissions on a continuous basis, is plainly a requirement that ensures the reduction of emissions on a continuous basis," and therefore satisfies the statutory definition of an emission standard or limitation. . . . This argument has considerable force.[32]

Next, the Tenth Circuit noted the Supreme Court's expansive interpretation of "any standard relating to the control of emissions" in a different provision of the CAA in *Engine Manufacturer's Ass'n v. South Coast Air Quality Management District*.[33] The Tenth Circuit explained:

> The language interpreted by the Supreme Court is not identical to the language at issue here; but if an anti-tampering requirement has been interpreted as a standard "relating to the control of emissions," 42 U.S.C. § 7543(a), one would think that it

---

[30] *Id.* at *14.

[31] *Id.*

[32] *Id.* at *14 (alteration in original).

[33] 541 U.S. 246 (2004). There, the Court held:

> "[S]tandard" is defined as that which "is established by authority, custom, or general consent, as a model or example; criterion; test." Webster's Second New International Dictionary 2455 (1945). The criteria referred to in [42 U.S.C. § 7543(a)] relate to the emission characteristics of a vehicle or engine. To meet them the vehicle or engine must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-control device, or must have some other design feature related to the control of emissions. This interpretation is consistent with the use of "standard" throughout Title II of the CAA (which governs emissions from moving sources) to denote requirements such as numerical emission levels with which vehicles or engines must comply, *e.g.*, 42 U.S.C. § 7521(a)(3)(B)(ii), or emission-control technology with which they must be equipped, *e.g.*, § 7521(a)(6).

> *Id.* at 252–53.

would also be a "requirement relating to the operation or maintenance of a source to assure continuous emission reduction," *id.* § 7602(l).[34]

Finally, the Tenth Circuit disagreed with the Ninth Circuit's analysis in *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.* (hereinafter *Fleshman*).[35] In *Fleshman*, which the Defendant here relies on extensively, the Ninth Circuit found that the statutory prohibitions of § 7522 were not "emission standards."[36] But the Tenth Circuit found that *Fleshman*'s narrow reading:

> appears to overlook that *emission standard* and *standard of performance* are both defined to encompass "any requirement relating to the operation or maintenance of a source to assure continuous emission reduction." **By removing or defeating emission-control devices** like oxidation catalysts or diesel particulate filters, **a person is violating a specific requirement to maintain the diesel truck to assure continuous emission reductions**.[37]

Furthermore, the Tenth Circuit noted that the *Fleshman* analysis is also seemingly predicated on the fact that § 7522 was enacted by Congress and is not a rule promulgated by the EPA Administrator.[38] That reasoning would have no application in a case, like the one in *Diesel Power* and here, in which a plaintiff also brought a claim under EPA regulations.

For all of these reasons, the court rejects TAP's argument that UPHE cannot bring this claim, and that the court lacks jurisdiction to hear it. The CAA authorizes citizens to sue to enforce "emissions standards and limitations,"[39] which can include any "standard of performance," meaning any "requirement established by the State or the [EPA]

---

[34] *Diesel Power*, 2021 WL 6122914, at *15.
[35] 894 F.3d 1030, 1041 (9th Cir. 2018).
[36] *Id.* at 1041–42 (citing 42 U.S.C. § 7602(k)).
[37] *Diesel Power*, 2021 WL 6122914, at *15 (italics in original, bold emphasis added) (citing 42 U.S.C. § 7602(k), (l)).
[38] *Id.* ("In addition, UPHE, unlike the plaintiff in Fleshman, based its tampering and defeat-device claims not only on the statutory provision . . . § 7522(a)(3), but also on the EPA regulations, *see* 40 C.F.R. § 86.1854-12(a)(3)(i), (ii), imposing the same requirements.").
[39] 42 U.S.C. § 7604(a).

Administrator . . . relating to the operation or maintenance of a source to assure continuous emission reduction" as well as any "design, equipment, work practice or operational standard promulgated under [the CAA]."[40] An anti-tampering requirement, such as that in § 7522 that prohibits a person from selling or installing a part to "bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle in compliance with regulations under [the CAA],"[41] seemingly ensures the reduction of emissions on a continuous basis because otherwise motor vehicles would emit higher levels of pollutants during operation. Thus, the requirement likely satisfies the statutory definition of an emission standard or limitation.[42]

TAP makes several arguments as to why this court should find that the anti-tampering requirements of § 7522 are not "emissions standards and limitations." First, TAP asserts that "for the purposes of the Clean Air Act, an 'emission standard' is unequivocally defined to mean a specific, non-discretionary legal limit on release of pollutants into the atmosphere."[43] But TAP's proposed unequivocal definition appears nowhere in the statutory text. And, although TAP relies on § 7604(f) to derive its proposed definition of "emission standard," it ignores the fact that "emission limitation," standard of performance," and "emission standard," as used in § 7604(f)

---

[40] *Id.* §§ 7604(f)(1), 7602(k), (l).

[41] *Id.* § 7522(a)(3)(B).

[42] Relatedly, emissions control software, hardware, and other equipment may meet the definition for any "design [or] equipment" under § 7602, which would make their defeat or removal a violation of § 7522. Section 7602(k) states that emissions standards or limitations include not only a requirement relating to maintenance of a source "to assure continuous emission reduction," but also "any design [or] equipment" promulgated under this chapter. Section 7522 states that no one may "remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter." Accordingly, if the term "design" has the same meaning in § 7602(k) as it does in § 7522, then the alleged violation of § 7522 also would violate an emissions standard or limitation under § 7602, which results in authorization of a citizen suit under Section 7604. Similarly, "equipment" under § 7602(k) and "device" under § 7522 may be synonyms or have overlapping meanings and thus tie those sections together. Even though the parties discussed all of these sections, they did not brief this specific issue. The court makes no finding on this issue, but notes that the failure to address these terms also would prevent the requested dismissal.

[43] Motion to Dismiss at 6.

are all further defined in § 7602(k) and (l). Thus, TAP's proposed definition both reads extraneous language into the statute and ignores the definitions that the statute offers; this court will not adopt it.

Next, TAP points this court to the Ninth Circuit's decision in *Fleshman* where that court found that the CAA did not authorize citizen suits to enforce the anti-tampering provisions of § 7522.[44] But, as outlined above, the Tenth Circuit in *Diesel Power* disagreed with *Fleshman's* reasoning.[45] As such, this court declines to follow the Ninth Circuit's decision in *Fleshman*.

In its reply brief, TAP also argues that the Supreme Court's decision in *South Coast* draws a distinction between emissions standards that are subject to citizen-suit enforcement and methods of standard enforcement that are not.[46] But TAP's argument is undermined by the Tenth Circuit's decision in *Diesel Power*. There, the Tenth Circuit relied on *South Coast* in holding that it was reasonable for a district court to permit such a citizen suit.[47] Furthermore, the Tenth Circuit noted *South Coast's* expansive definition of "standard" and did not find that *South Coast* might preclude such citizen suits.[48] To the contrary, the Tenth Circuit emphasized *South Coast*'s reasoning that "the use of 'standard' throughout Title II of the CAA" included not only numerical emission levels, but also "emission-control technology with which [vehicles or engines] must be equipped."[49]

---

[44] *Id.* at 9.
[45] *See Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, ___ F.4th ___, No. 20-4043, 2021 WL 6122914, at *15 (10th Cir. Dec. 28, 2021).
[46] Defendant's Reply in Support of Motion to Dismiss, ECF No. 22 at 5–6.
[47] *Diesel Power*, 2021 WL 6122914, at *14–15.
[48] *Id.*
[49] *Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004).

Additionally, TAP contends that the Tenth Circuit has found that the intent of the citizen-suit provision of the CAA is to limit citizen suits to the enforcement of "specific non-discretionary clear-cut requirements of the Clean Air Act."[50] But the case TAP cites, *Mountain States Legal Foundation v. Costle*, involved a suit under 42 U.S.C. § 7604(a)(2), which explicitly permits citizen suits "against the [EPA] Administrator where there is alleged a failure of the Administrator to perform any act or duty under [the CAA] which is not discretionary."[51] In contrast, here UPHE sues under § 7604(a)(1), which does not contain language that limits citizen suits to enforcement of specific, nondiscretionary CAA requirements, but rather authorizes suits against "any person . . . who is alleged to have violated . . . an emission standard or limitation under [the CAA]."[52] As such, *Mountain States* is inapposite.[53] Moreover, it seems plain enough that the requirements of § 7522 and its associated regulations are both "non-discretionary" and "clear cut": no person may sell or install any part or component that defeats or renders inoperative any device, hardware, or software "used to control exhaust emissions of a vehicle"; they also may not remove or render inoperative emissions control devices, hardware, or software.[54]

---

[50] Motion to Dismiss at 9 (citing *Mountain States Legal Found. v. Costle*, 630 F.2d 754, 766 (10th Cir. 1980)).

[51] *See id.* ("In terms of 'citizens suits,' they are, in our view, clearly authorized by direct proceedings in the district courts under 42 U.S.C. § 7604 when the EPA Administrator is charged with failure to perform a non-discretionary duty.").

[52] 42 U.S.C. § 7604(a)(1).

[53] TAP cites to other nonbinding and inapposite authority in an attempt to argue that UPHE's suit is barred, including an appendix of a D.C. Circuit opinion that references the legislative history of the CAA amendments, *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 723 (D.C. Cir. 1974) (Appendix B), and a string of Second Circuit cases seeking to enforce National Ambient Air Quality Standards, undefined "reasonable progress" criteria, and a suggested hydrocarbon emissions reduction. *Wilder v. Thomas*, 854 F.2d 605, 612–13 (2d Cir. 1988); *Council of Commuter Orgs. v. Metro. Transp. Auth.*, 683 F.2d 663, 670 (2d Cir. 1982); *Action for Rational Transit v. W. Side Highway Project by Bridwell*, 699 F.2d 614, 617 n.3 (2d Cir. 1983). In contrast to these lawsuits, UPHE looks to enforce the CAA anti-tampering mandate of § 7522 which plainly prohibits removing emission-control devices or selling defeat devices. The fact-finding involved in this suit is not akin to the type of scientific fact-finding that would underpin the suits listed above.

[54] 42 U.S.C. § 7522(a)(3)(A)–(B); 40 C.F.R. § 86.1803-01.

Finally, in its reply brief, TAP contends that 42 U.S.C. § 7523 mandates that actions to enforce the anti-tampering provisions of § 7522 be brought only by the United States government.[55] Although TAP argues that the statute "expressly requires that <u>all</u> actions to enforce Section 7522 . . . be brought by, and only by, the United States government,"[56] the text of the statute does not use the words "all actions" or "only the United States." Section 7523 reads:

> The district courts of the United States shall have jurisdiction to restrain violations of section 7522(a) of this title. . . . Actions to restrain such violations shall be brought by and in the name of the United States.[57]

Considered alone, the foregoing may be read to permit only the United States to enforce § 7522(a), but the timing of this provision and the subsequent amendment to the CAA authorizing citizen suits must be taken into account. The citizen-suit provision of the CAA, § 7604, was added to the Act as part of the Clean Air Act Amendments of 1970, while § 7523 was made law five years earlier in 1965.[58] As such, the sections can be read together such that no conflict exists. Section 7523 granted authority to the United States to restrain violations of § 7522. And five years later, § 7604 expanded that authority to citizens as to all emissions standards and limitations. Thus, the provisions need not be in conflict.

Additionally, § 7523 says that the United States shall bring actions "to restrain" violations. Though the court does not decide the issue, the word "restrain" most naturally suggests injunctive relief. While the term might be broad enough to encompass civil penalties,

---

[55] ECF No. 22 at 1.
[56] *Id.* (underlining in original).
[57] 42 U.S.C. § 7523(a)–(b).
[58] *See* Plaintiff's Surreply, ECF No. 26 at 3 n. 3 (citing PL 89-272, § 101(8); PL 91-604, § 12).

the fact that the immediately following provision, § 7524, deals with civil penalties makes this less likely here. Given this, the court is not persuaded that § 7523 would preclude this suit.[59]

In summary, TAP has not demonstrated that the CAA does not authorize citizen suits to enforce the anti-tampering provisions of § 7522. First, the plain text of the statute permits citizen suits to enforce "emissions standards and limitations," which include any "standard of performance" and "requirement[s] relating to the operation or maintenance of a source to assure continuous emission reduction."[60] Requirements that mandate the installation or maintenance of devices that reduce emissions of vehicles, such as catalytic converters, likely fall within this definition. Second, the Tenth Circuit's analysis in *Diesel Power* suggests that "[d]efinitions within the CAA itself" refute Defendant's proposed narrow reading and that "by removing or defeating emission-control devices . . . a person is violating a specific requirement to maintain the [vehicle] to assure continuous emission reductions."[61] Third, TAP cites no apposite case law—other than *Fleshman*, which the Tenth Circuit has rejected—that plainly precludes a citizen suit to enforce the anti-tampering provisions of the CAA. Finally, the text of § 7523 need not conflict with the citizen-suit provision of the CAA because the latter postdates it and the former, in any event, may only apply to injunctive relief. Accordingly, TAP's motion to dismiss is denied on the first ground.

---

[59] The case at bar seeks both injunctive relief and civil penalties, so this reading could limit the remedies sought, but still not dispose of the case.
[60] *Id.* §§ 7604(f)(1), 7602(k), (l).
[61] *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, ___ F.4th ___, No. 20-4043, 2021 WL 6122914, at *14 (10th Cir. Dec. 28, 2021).

## II.  UPHE has Article III standing to bring a claim under the CAA.

TAP's second argument for dismissal is that UPHE lacks Article III standing to bring its claim.[62] "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[63] TAP does not dispute that UPHE's interests at stake are germane to its purpose or that neither the claim asserted nor relief requested require the participation of individual members in the lawsuit.[64] Accordingly, the question of whether UPHE has standing turns on whether UPHE's members have standing to sue individually.

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[65]

### A.  UPHE's has adequately alleged an injury in fact.

To allege an injury in fact, a plaintiff must allege "not injury to the environment but injury to the plaintiff."[66] Here, UPHE alleges that its members "are concerned about the demonstrated health risks posed by environmental pollutants associated with a wide array of

---

[62] Moton to Dismiss at 12.
[63] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).
[64] Motion to Dismiss at 13, n. 5.
[65] *Laidlaw*, 528 U.S. at 180–81 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).
[66] *Id.* at 181.

acute and chronic diseases"[67] and that "[t]he health, environmental and aesthetic interests of [UPHE] and its members have been, are being, and . . . will continue to be adversely affected by TAP Worldwide's alleged repeated and ongoing violations of the Clean Air Act."[68] Specifically, UPHE alleges that its members "necessarily breath the air of the Wasatch Front at home, at work, on roads and highways, and during outdoor pursuits and other activities"[69] and that its members "suffer from a reduced enjoyment of life when they are forced to avoid activities such as traveling, walking, running, hiking, skiing, and biking, or are unable to see with clarity the beautiful scenery that was once visible, due to high pollution levels."[70]

"[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."[71] Here, the members of UPHE allege that they enjoy recreating in the Wasatch Front, enjoy the scenery of the area, and that TAP's removal of air-pollution control devices has increased air pollution on the Front and lessened their ability to recreate.[72] Thus, UPHE has adequately alleged an injury in fact.[73]

TAP argues that UPHE has not adequately alleged injury in fact because "the Complaint only provides bare assertions that such health effects [from emissions] are related to TAP

---

[67] Complaint at ¶ 8.

[68] *Id.* ¶ 10.

[69] *Id.* ¶ 19.

[70] *Id.* ¶ 22.

[71] *Laidlaw*, 528 U.S. at 183 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

[72] Complaint at ¶¶ 8–14, 18–22, 30.

[73] The Tenth Circuit's recent decision in *Diesel Power* supports this conclusion. There, the court stated: "Defendants do not dispute (nor do we see a basis for them to do so) the district court's determination that UPHE members suffered injury in fact because of 'adverse health effects from elevated air pollution in the Wasatch Front or exposure to diesel exhaust' and reduced participation 'in outdoor recreational activities due [to] their concerns about fine particulate matter pollution.'" *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, ___ F.4th ___, No. 20-4043, 2021 WL 6122914, at *7 (10th Cir. Dec. 28, 2021) (quoting *Utah Physicians for a Healthy Env't v. Diesel Power Gear LLC*, 374 F. Supp. 3d 1124, 1145 (D. Utah 2019)) (alteration in original).

Worldwide's actions, and such bare assertions of harm are insufficient to establish injury in fact."[74] This argument fails for two reasons. First, at this stage, UPHE need only plausibly allege that the health effects that its members suffer are related to TAP's actions, which it has done.[75] Second, two of the cases that TAP cites to support its argument hold that a plaintiff may not allege the violation of a mere *procedural* right absent some concrete harm.[76] Here, UPHE has not alleged a violation of a mere procedural right—instead it has alleged that its members are concretely harmed by the air pollution on the Wasatch Front.[77] Physical harm is "a harm traditionally recognized as providing a basis for a lawsuit in American courts."[78] As such, the cases that TAP cites are inapposite here.

TAP also argues that UPHE has not alleged that the increase in emissions caused by TAP also caused emissions beyond an applicable air quality standard in the CAA.[79] TAP cites no binding authority stating that § 7522 and its related regulations can only be violated if a defendant's actions cause an increase in emissions above a certain level. The text of those provisions does not contain such a requirement, and TAP's reliance on a nearly half-century old

---

[74] Motion to Dismiss at 14.

[75] *See, e.g.*, Complaint at ¶ 20 ("Motor vehicles that exceed their emission standards due to TAP Worldwide's activities contribute to these adverse effects.").

[76] *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, Robins could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."); *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing."). The third case that TAP cites found that a plaintiff lacked standing where, after a trial, he had presented no evidence that he was injured by the defendant's actions. *Loving v. Boren*, 133 F.3d 771, 773 (10th Cir. 1998). This case is distinct from the situation here where, at the motion to dismiss stage, UPHE has alleged that its members are injured by the harmful effects of air pollution on the Wasatch Front.

[77] *E.g.*, Complaint at ¶ 20 ("Physicians' members suffer from elevated, unhealthful levels of $PM_{2.5}$ in many other ways, including experiencing vision impairment, reduction of lung capacity, sinus irritation, coughing spells and foul smells.").

[78] *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

[79] Motion to Dismiss at 14–15.

EPA "interim policy" is not a basis for dismissing this lawsuit. To adequately allege an injury in fact, UPHE needed only to allege that its members suffered some actual, concrete and particularized injury, which it has done.

### B.  The injury to UPHE's members is fairly traceable to TAP.

The second prong of the standing analysis requires plaintiffs to allege that their injury is "fairly traceable to the challenged action of the defendant."[80] TAP argues that "the Complaint fails to connect TAP Worldwide's actions to any air pollution within the State of Utah or elsewhere" and thus fails to establish that the injury to UPHE's members is fairly traceable to TAP.[81]

TAP first claims that, if the court disregards all conclusory statements of law in the complaint, there are no facts pled to support the assertion that TAP installed aftermarket vehicle products onto vehicles and thus any injury from air pollution cannot be fairly traced back to TAP.[82] This is incorrect. UPHE makes numerous allegations that TAP installed the parts it sold.[83] At the motion to dismiss stage, the court assumes UPHE's factual allegations are true. UPHE has adequately alleged air-pollution-related injuries from TAP's sale and installation of aftermarket defeat parts on the Wasatch Front.

TAP also argues that, even if its actions have caused air pollution, UPHE has still not alleged that its injuries are fairly traceable to TAP because UPHE has not alleged that TAP itself

---

[80] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).
[81] Motion to Dismiss at 15.
[82] *Id.* at 16.
[83] *See* Complaint at ¶ 9 ("Physicians allege that prohibited parts in motor vehicles, that have been sold and installed by TAP Worldwide in Utah, cause excess emissions."); *Id.* ¶ 13 ("The parts subject to this action that have been, and continue to be, offered for sale, sold, and installed by TAP Worldwide. . . ."); *Id.* ¶ 64 ("TAP Worldwide has repeatedly installed aftermarket defeat parts in Utah. TAP Worldwide represents that it installs everything it sells.").

discharged any air pollutant.[84] UPHE alleges that TAP sold and installed aftermarket defeat parts

that increased air pollution from mobile sources.[85] The causal chain between TAP selling and

installing devices that have the effect of increasing vehicle emissions and UPHE's members' air-

pollution-related injuries is not so attenuated that it undermines standing. UPHE need not allege

that TAP itself was directly responsible for air pollutant discharge for UPHE's injuries to be

fairly traceable to TAP.[86] UPHE has made sufficient allegations to satisfy the second prong of

standing.

### C.  The injury to UPHE's members would be redressed by a favorable decision.

The final prong of the standing analysis requires that the plaintiff allege facts that

demonstrate "it is likely, as opposed to merely speculative, that [its] injury will be redressed by a

favorable decision."[87] In a citizen enforcement suit, the relief sought must not "merely

advance[e] generalized environmental interests," but must specifically redress the plaintiff's

injuries.[88] Here, UPHE seeks an injunction to stop TAP from selling aftermarket defeat parts in

Utah, stop TAP from removing or rendering inoperative any emission control device in motor

vehicles in Utah, make TAP take measures to retrieve aftermarket defeat parts that it has sold in

Utah, have TAP fund an environmentally beneficial project to reduce the excess pollution it

caused, and mandate that TAP pay a civil penalty for its violations.[89] These remedies would not

---

[84] Motion to Dismiss at 16.

[85] *See, e.g.*, Complaint at ¶ 22.

[86] Again, this is consistent with the Tenth Circuit's decision in *Diesel Power*. There, the court found that the plaintiffs had standing to sue a retailer of aftermarket defeat parts with respect to air pollution on the Wasatch Front and noted that "[t]hose who reside in that area can fairly trace injuries they suffer from the polluted air to any contributor of prohibited emissions in the area." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, ___ F.4th ___, No. 20-4043, 2021 WL 6122914, at *10 (10th Cir. Dec. 28, 2021). Similarly, that car owners would decide to drive the vehicles containing the defeat parts is "virtually inevitable." *Id*.

[87] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

[88] *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1190 (10th Cir. 2012).

[89] Complaint at 44, ¶ E.

merely advance generalized environmental interests but would specifically redress UPHE's alleged injuries caused by air pollution on the Wasatch Front. Accordingly, the redressability prong of standing is met.[90]

TAP argues that UPHE has not satisfied the requirements of redressability because it "has not demonstrated that TAP Worldwide's actions negatively contribute to the environment, and there is no allegation that the [aftermarket defeat] parts increase emissions beyond certified limits."[91] This argument is unavailing. At the motion to dismiss stage, UPHE need not prove that TAP's actions harm the environment, as the court must accept all well-pled factual allegations and the reasonable inferences therefrom as true.[92] And, as discussed in the injury-in-fact analysis, the question of whether TAP increased emissions beyond certified limits is not required to show Article III standing. Here, UPHE has adequately pled that it is likely that its injury will be redressed by a favorable decision.

### III. UPHE has pled sufficient facts to sustain its cause of action.

UPHE's complaint must contain enough factual matter, taken as true, to state a plausible claim for relief.[93] TAP argues that UPHE's complaint fails to state a claim for violations of the CAA for four reasons. First, that UPHE fails to plead that the parts, once installed, would cause noncompliance with applicable emissions limits or increase vehicle emissions beyond allowable limits.[94] Second, that UPHE fails to plead an essential element of a violation of § 7522 because it

---

[90] This is consistent with the Tenth Circuit's decision in *Diesel Power*, in which it held: "As for the standing of the individual members of UPHE, the first [injury] and third [redressability] elements are not in serious doubt. . . . the members' injuries are redressable through both injunctive relief and the imposition of penalties on wrongdoers whose violations were ongoing at the time UPHE filed suit." *Diesel Power Gear*, 2021 WL 6122914, at *7.
[91] Motion to Dismiss at 17.
[92] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).
[93] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[94] Motion to Dismiss at 16–17.

has not alleged facts about the sales of aftermarket defeat parts and explained "how the products affect emissions."[95] Third, that UPHE has failed to allege that the products were sold or installed in Utah.[96] And fourth, that UPHE fails to explain how any product referenced in the complaint could violate the CAA or Utah SIP without some action by a third party.[97]

TAP's first argument that UPHE fails to allege that the parts would cause noncompliance with certain applicable emissions limits is unavailing. The text of § 7522 makes it illegal:

> (A) for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser; or

> (B) for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.[98]

Thus, the plain text of the statute prohibits individuals from removing parts that are required by the CAA or selling and installing parts that defeat required devices. If there is a further requirement that those prohibited acts must result in a certain emissions level to be actionable, TAP has not identified its source in the law.

Similarly, a violation of R307-201-2 of Utah's SIP mandates that "[n]o person shall remove or make inoperable within the State of Utah the system or device or any part thereof,

---

[95] *Id.* at 17.
[96] *Id.*
[97] *Id.* at 18.
[98] 42 U.S.C. § 7522(a)(3)(A)–(B).

except for the purpose of installing another system or device, or part thereof, which is equally or more effective in reducing emissions from the vehicle to the atmosphere."[99] Again, the text of the regulation suggests that the violation occurs with the action of removing or rendering the emission control system inoperable or less effective in reducing emissions, which is what is alleged here.[100] The regulation does not contain an element that requires subsequent emissions to exceed a particular limit.

TAP's second argument—that UPHE fails to plead an essential element of its claim because it has not pled facts about the alleged sales of aftermarket defeat parts and explained how the products affect emissions—also fails. Again, the text of the statute and the Utah SIP do not require an explanation of specifically how the products affect emissions.[101] The Complaint alleges many nonconclusory facts about TAP's alleged sales and offers for sale of aftermarket defeat parts, that Defendants installed the parts they sold, and that modified vehicles then emitted increased emissions into the air.[102] These allegations suffice to meet the textual elements of both 42 U.S.C. § 7522(a)(3) and Utah SIP Regulation R307-201-2.

TAP's third argument, that UPHE failed to allege that TAP's parts were sold and installed in Utah, is factually incorrect. In its Complaint, UPHE alleges that "prohibited parts in motor vehicles . . . have been sold and installed by TAP Worldwide in Utah";[103] that TAP has "two brick-and-mortar 4 Wheel Parts Performance Centers in Utah . . . [which] sell and install

---

[99] *See* 40 C.F.R. § 52.2320, 71 Fed. Reg. 7679 (Feb. 14, 2006).
[100] Complaint at ¶¶ 108–118.
[101] *See* 42 U.S.C. § 7522(a)(3)(A)–(B); Utah R307-201-2.
[102] Complaint at ¶¶ 61–85.
[103] *Id.* ¶ 9.

aftermarket defeat parts and remove emission control devices";[104] and that TAP "continues to offer to sell . . . and install aftermarket defeat parts in Utah."[105]

TAP's final argument, that UPHE cannot allege that TAP violated the CAA absent some independent action by a third party, is also legally inaccurate. The plain text of the statute and regulation indicates that in order to plead a violation of § 7522 or the Utah SIP, UPHE need only allege that TAP has offered to sell, sold, or installed some aftermarket defeat parts.[106] That TAP apparently intends to argue that third parties are responsible, or that their actions break the causal chain, does not prevent UPHE from stating a claim. UPHE has adequately pled sufficient facts to state a plausible claim under both the CAA and Utah's SIP.

## ORDER

For the foregoing reasons, TAP's motion to dismiss is DENIED.

Signed January 25, 2022.

BY THE COURT

David Barlow
United States District Judge

---

[104] *Id.* ¶ 26.
[105] *Id.* ¶ 64.
[106] 42 U.S.C. § 7522(a)(3)(A)–(B); Utah R307-201-2.